The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Hoag and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award.
* * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
1. The parties were subject to and bound by the North Carolina Workers' Compensation Act at the time of the alleged injury.
2. An employer-employee relationship existed at the time of the alleged injury.
3. Grain Dealers Mutual Ins. Co. was the carrier on the risk with James C. Greene Co. as the adjusting agent.
4. The average weekly wage of the plaintiff was $298.13 at the time of the alleged injury.
5. The date of the alleged incident giving rise to this claim was June 11, 1993.
6. The following additional records were also stipulated into evidence:
a. Medical records:
 Dr. Suh, (2 pages); Dr. Fulghum, (2 pages); Dr. Boerner, (2 pages); Brentwood Psychological, (14 pages).
 b. Plaintiff's recorded statement taken on August 13, 1993.
 c. Debra Rowe Hamm's recorded statement taken on September 6, 1993.
 d. Plaintiff's Response to Defendant's First Set of Interrogatories and Request for Production of Documents.
* * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. At the time of the hearing, plaintiff was a 40 year old female who had been employed at Heritage Bank in Wilson since November 1989 as head teller and vault teller.
2. Plaintiff had a long history of pre-existing back problems which had resulted in three prior surgeries in 1987, 1990 and 1991. Bank personnel were aware of plaintiff's history of back problems and attempted to accommodate plaintiff by providing assistance and not requiring her to lift heavy objects. However, plaintiff was not under any medical restrictions and had not been instructed by bank management to limit her performance of tasks.
3. Plaintiff had been under the care of Dr. James S. Fulghum since June 29, 1992. She initially presented with recurrent pain of the lower back and right leg with aching sensations in the lower lumbar midline, bilateral in severity and involving the right posterior lateral thigh and calf. After giving plaintiff a physical examination, taking and reviewing x-rays and studying an MRI, Dr. Fulghum diagnosed a large herniated disk at L4-5 and central and to the right of multilevel degenerative disc disease located at L3-4, L4-5 and L5-S1.
4. In 1992 plaintiff considered the possibility of fusion surgery as compared to conservative treatment for the back. Plaintiff elected to undergo a conservative treatment program which included physical therapy, medication, and reconditioning exercises. Plaintiff last saw Dr. Fulghum prior to the June 30, 1993 incident on December 30, 1992. On that date, Dr. Fulghum found plaintiff was in stable condition which was the best level he felt plaintiff could reach considering her history. Plaintiff was capable of working at Heritage Bank without any restrictions or difficulties at that time and did not undergo further treatment until June 1993.
5. On the morning of June 11, 1993, plaintiff was with her immediate supervisor, Ms. Debra Rowe Hamm, in a room off the main customer service area of Heritage Bank to obtain coinage from the vault for the day's banking business. The vault from which coin boxes were being removed required two persons to unlock it. As was customary, plaintiff and Ms. Hamm went to the vault, unloaded it and Ms. Hamm slid the boxes of coins out of the vault and onto the room of the floor. Ms. Hamm's job was to document the transaction and to re-lock the vault. As Ms. Hamm was sitting at a writing table, plaintiff reached down to pick up a coin box. Ms. Hamm did not actually view plaintiff picking up the box but heard the plaintiff comment, "I shouldn't have done that". Plaintiff felt pain immediately in her back, but was able to continue working the remainder of the day.
6. Over the weekend, plaintiff's back pain intensified and on Sunday evening she telephoned Ms. Hamm to indicate that her back pain was so severe that she had made an appointment with her physician, Dr. Fulghum, the next morning, June 14, 1993.
7. Although plaintiff's prior back surgeries placed her at a greater risk of re-injuring or aggravating her back, the incident on June 11, 1993 constituted a new back injury which arose out of and in the course of plaintiff's employment with Heritage Bank as a result of a specific traumatic incident of the work assigned.
8. Plaintiff consulted Dr. Fulghum on the Monday following the incident at work. She related to him the circumstances of her incident which involved leaning over to pick up a box of pennies.
9. Dr. Fulghum next examined plaintiff on June 30, 1993. At that time, Dr. Fulghum was of the opinion that plaintiff could no longer do the type of work involved in her job, except if she were not required to lift 25 pounds on a frequent basis or stand for more than 30 minutes at the time. Those restrictions could not be met by Heritage bank, and therefore, plaintiff did not return to work.
10. Dr. Fulghum was of the opinion that the specific traumatic incident of the work assigned occurring on June 11, 1993 substantially aggravated plaintiff's pre-existing back condition.
11. Plaintiff next consulted Dr. Fulghum on September 2, 1993 and determined to go ahead with a discogram. The discogram revealed 3 levels of abnormality producing severe pain upon injection. A decision was made by plaintiff at that time to proceed with surgery.
12. Surgery was performed on March 4, 1994 consisting of a lumbar laminectomy done from L-3 through the sacrum for the removal of bone and scar tissue. The discs on those three levels were removed. The bone was fused together by the use of screws and plates and then bone grafts were inserted and packed into the discs' spaces.
13. Plaintiff was examined on March 17, 1994 for a post-operative visit and to have the staples from the incision removed. It was Dr. Fulghum's opinion that at that date, as well as subsequently on April 19, 1994 and on June 16, 1994, that the plaintiff was not able to return to work. Dr. Fulghum saw and re-examined plaintiff on August 5, 1994 and September 30, 1994. Since plaintiff had retained much of her original pain, Dr. Fulghum referred her to the Carolina Pain Consultants.
14. As of September 30, 1994, Dr. Fulghum was of the opinion that plaintiff was not able to return to work at Heritage Bank. At the time of the hearing, plaintiff had not been released from Dr. Fulghum's care. Her prognosis, according to the doctor, is very guarded and very poor. Since plaintiff has not been released from Dr. Fulghum's care and has not returned subsequent to September 30, 1994, she cannot be considered to be at maximum medical improvement. Plaintiff has not received a rating.
15. Plaintiff has not been able to do work of any kind since the occurrence of her injury by accident, by way of a specific traumatic incident of the work assigned on June 11, 1993. As a result, plaintiff has not been able to earn wages of any kind and has had no income.
* * * * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. On June 11, 1993, plaintiff sustained an injury by accident arising out of and in the course of her employment which was the direct result of a specific traumatic incident of the work assigned. N.C. Gen. Stat. § 97-2 (6).
2. There is competent medical evidence that the injury resulting from a specific traumatic incident of the work assigned materially aggravated the pre-existing injuries to plaintiff's back. Due to that aggravation and resulting impairment to plaintiff's back, plaintiff was unable to be gainfully employed from the date of the accident. She has work restrictions which prevent her from being able to return to work at Heritage Bank. As a result, plaintiff is unable to earn the same wages, or in fact, any wages. Anderson v. Motor Co., 233 N.C. 372,64 S.E.2d 265 (1951).
3. Plaintiff is entitled to compensation at two-thirds of her average weekly wage which was stipulated by the parties to be $298.13, yielding a rate of $198.75 per week for temporary total disability sustained as a result of her injury by accident from June 12, 1993 up through the date of the initial hearing on January 18, 1995 and continuing until plaintiff sustains a change of condition, returns to work, or until defendants receive permission from the Industrial Commission to stop payment of compensation. N.C. Gen. Stat. 97-29.
4. As the result of her injury by accident, plaintiff is entitled to have defendants pay for all medical expenses incurred to the date of the hearing and in the future, arising from the injury by accident on June 11, 1993 provided such expenses are submitted and approved. N.C. Gen. Stat. 97-25.
* * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. Defendants shall pay plaintiff temporary total disability benefits at the rate of $198.75 from June 12, 1993 through the date of the initial hearing on January 17, 1995. Plaintiff is entitled to continuing temporary total disability benefits until plaintiff has sustained a change of condition, returns to work or until defendants obtain permission from the Industrial Commission to stop payment of compensation. N.C. Gen. Stat. 97-29.
2. As the result of her injury by accident, plaintiff is entitled to have defendants pay for all medical expenses incurred to the date of the hearing and in the future, arising from her injury by accident sustained on June 11, 1993.
3. That portion of compensation which has accrued shall be paid in a lump sum without commutation. The plaintiff's attorney is awarded a sum of 25 percent of the lump sum of accrued compensation, and thereafter, every fourth check.
4. Defendants shall pay the costs.
This is the ____ day of October, 1996.
 S/ ____________________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING: S/ ____________________________ BERNADINE S. BALLANCE COMMISSIONER
S/ ____________________________ J. RANDOLPH WARD COMMISSIONER